## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

PENNIE PROCTOR, on her own behalf and on
behalf of other similarly situated,

                    Plaintiff,

-vs-                                      Case No.  2:10-cv-623-FtM-29SPC

SOUTH FLORIDA BARBEQUE, INC., also
known as SONNY'S BBQ PALM BEACH BLVD.,

                    Defendant.

_____

## REPORT AND RECOMMENDATION

       This matter comes before the Court on the Plaintiff, Pennie Proctor's Motion to Approve and/or Enforce Settlement Agreement (Doc. #60) filed on May 12, 2011.  The Defendant, South Florida Barbeque, Inc., filed its Response in Opposition (Doc. # 61) on May 25, 2011.  The Motion is now ripe for review.

## FACTS

       On October 10, 2010, the Plaintiff filed her complaint alleging the Defendant violated the Fair Labor Standards Act (FLSA) 29 U.S.C. § 216(b) as amended and Article X, Section 24 of the Florida Constitution.  The Plaintiff alleged that the Defendant maintained a tip pool policy that violated the FLSA because she did not receive the Florida Tipped Minimum Wage for all the hours she worked.  Eventually eleven (11) other similarly situated employees joined in the lawsuit.

       The Defendant states that on February 10, 2011, Plaintiffs were offered "full relief" for their claims.  The Plaintiffs' Counsel corresponded on February 22, 2011, informing the counsel for

Defendant that he would give counsel for the Defendant the fee/cost demand once the Plaintiffs had the chance to review the records to confirm the payments were one hundred percent (100%) of their unpaid wages plus liquidated damages. On March 9, 2011, the Defendant again corresponded on two occasions with the Plaintiffs' Counsel asking for a status regarding the Defendant's offer and requesting a computation of the Plaintiffs' attorney's fee award calculations. The Plaintiffs' Counsel responded on March 22, 2011, that he did not have the exact number but the fees and costs were not much but "it's less approx [sic] $10K." (Doc. # 61-5). On March 28, 2011, the Plaintiffs' Counsel sent an e-mail that detailed Plaintiffs' fees and costs as follows:

Costs : $742.76

Attorney Time: $8,571.00

Paralegal Time: $1,327.15

**Total: $10,640.91**

The Defendant replied "[we'll] agree to $10,640.91 in fees and costs to settle the entire matter. Please notify the Court today that we reached Settlement because today is our Answer deadline." (Doc. # 61-7). The Response by the Plaintiffs' Counsel on March 28, 2011, was "[d]one. Please draft as a 33% contingency as discussed (adding in the fees/costs), with each Plaintiff to receive a proportionate share of the total 66.7% class pot." (Doc. # 61-8).

The Defendant states the Plaintiffs' last response on March 28, 2011, was a rejection of the terms of the agreement. The Plaintiffs subsequently filed the instant Motion to Enforce/Approve the Settlement Agreement.

## **DISCUSSION**

Settlement agreements are favored in Florida and will be enforced by courts whenever possible. Specialty Disease Management Services, Inc. v. Aids Healthcare Foundation, 2003 WL 25608009, *3-4 (M.D. Fla. Oct. 21, 2003) (citing Spiegel v. H. Allen Homes, Inc., 834 So. 2d 295, 297 (Fla. 4th DCA 2002)) ("Settlement agreements are favored as a means to conserve judicial resources. Courts will enforce them when it is possible to do so."); Sec. Ins. Co. of Hartford v. Puig, 728 So.2d 292, 294 (Fla. 3d DCA 1999) ("Settlement agreements are governed by contract rules and are highly favored."); Ashley v. Gersten, 700 So.2d 462, 463 (Fla. 4th DCA 1997) ("Settlement agreements are highly favored in Florida and will be enforced whenever possible.").

"The party seeking to enforce a settlement agreement bears the burden of showing the opposing party assented to the terms of the agreement."  Specialty Disease Management Services, 2003 WL 25608009 at *3-4) (citing Spiegel, 834 So.2d at 297). "To compel enforcement of a settlement agreement, its terms must be sufficiently specific and mutually agreed upon as to every essential element." Specialty Disease Management Services, 2003 WL 25608009 at *3-4 (citing Schlosser v. Perez, 832 So.2d 179, 182 (Fla. 2d DCA 2002) (holding "[a]lthough settlement agreements are favored by the law, there must be a meeting of the minds as to the essential settlement terms in order for settlement agreements to be enforceable."); Williams v. Ingram, 605 So.2d 890, 893 (Fla. 1st DCA 1992) (holding "[p]reliminary negotiations or tentative and incomplete agreements will not establish a sufficient meeting of the minds to create an enforceable settlement agreement. Nor may an agreement be determined to be final where the record establishes that it is the intent of the parties that further action be taken prior to the completion of a binding agreement."). However, "[u]ncertainty as to nonessential terms or small items will not preclude the enforcement

of a settlement agreement." <u>Spiegel</u>, 834 So.2d at 297. " '[T]he making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs-not on the parties having meant the same thing but on their having said the same thing.' "<u>Specialty Disease Management Services</u>, WL 25608009 at *3-4.

"Settlement agreements are construed under the law as any other contract and the fact that an agreement may provide that a further more specific agreement will be entered into later does not affect the enforceability of the original agreement." <u>Id.</u> at * 4.  A contract is not lacking in effect merely because it expresses the idea that something is left to a future agreement and such an agreement to agree is simply an agreement *in praesenti* to do it." <u>Id.</u> "The agreement to agree is enforceable if it is sufficiently specific to be capable of implementation and all the essential elements are set forth." <u>Id.</u>

"A trial court's finding that there was a meeting of the minds must be supported by competent substantial evidence." <u>Id.</u> (citing <u>Spiegel</u>, 834 So.2d at 297). "Where the contractual language is clear, courts may not indulge in construction or modification and the express terms of the settlement agreement control." <u>Specialty Disease Management Services</u>, WL 25608009 at * 4.

The Plaintiffs argue that an enforceable settlement agreement was reached whereby the Parties agreed on the (i) monetary terms of the settlement, (ii) the non-monetary terms of the settlement agreement, and (iii) the methodology under which the monies would be paid to both the Plaintiffs and their counsel.  The Plaintiffs state that it was agreed that the funds would be paid into a common or class fund and that each Plaintiff would be paid out of that fund as well as all attorney's fees and costs.  The Defendant states that it offered to pay the Plaintiffs' back wages in full plus liquidated damages.  The Defendant's attorneys would then be paid a lodestar fee.

After a review of the respective memoranda of law, the Court does not find that an agreement was reached between the parties. The Defendant made an offer to pay in full the Plaintiffs' back wages and liquidated damages. The e-mails between the parties show that the Defendant's counsel agreed to $10,640.91 in attorney's fees and costs. (Doc. # 61-7). Yet the final response to the Defendant's offer was "[d]one, please draft as a 33% contingency as discussed (adding in the fees/costs), with each Plaintiff to receive a proportionate share of the total 66.7% class pot." (Doc. # 61-8). Nothing until that time was mentioned about a class pot nor a contingency fee. The Plaintiffs' Counsel's last e-mail did not confirm an agreement between the parties but instead added a new term – a new term that was not agreed upon – to the negotiations. Thus, there was no meeting of the minds in this case.

The Court also notes that the new terms presented by the Plaintiffs' Counsel would increase the attorney's fees from $10,640.91 to $46,194.29. (Doc. # 60, p. 12). At the same time, the new terms would reduce the Plaintiffs' liquidated damages to thirty-three (33%) percent of their back wages instead of an amount equal to the lost wages or overtime. See Powell v. Carey International, Inc., 514 F. Supp.2d 1302, 1324 (S.D. Fla. 2007) (citing 29 U.S.C. § 216(b) "[a]ny employer who violates the provisions of section 6 or section 7 of this Act [29 USCS §§ 206 or 207] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."). In essence, the new terms presented by the Plaintiffs' Counsel would result in an increased fee for counsel, but a decrease in liquidated damages for his clients.

In order for the Court to determine whether the proposed settlement is reasonable counsel for the claimant(s) must first disclose the extent to which the FLSA claim has or will be

compromised by the deduction of attorney's fees, costs or expenses.  Any payment above a reasonable fee detracts from the plaintiffs' recovery. <u>See</u> <u>Petrov v. Cognoscenti Health Institute, LLC.</u>, 2010 WL 557062 * 3 (M.D. Fla. Feb. 12, 2010).  The Defendant agreed to pay the lost wages and the liquidated damages, in full.  The Plaintiffs' Counsel's proposed contingency fee settlement made by the Plaintiffs' Counsel on March 28, 2011, does not allow for full liquidated damages as agreed to by the Defendant.  As such, the Plaintiffs' Counsel's proposed contingency fee agreement detracts from the Plaintiffs' full liquidated damages recovery.  The Court cannot deem such an agreement as fair under the terms of the FLSA.  <u>Id.</u> (holding that when a Plaintiff receives less than a full recovery, any payment above a reasonable attorney's fee improperly detracts from the plaintiff's recovery).

The Defendant, in its response, requested the Court to enforce as an agreement the last e-mail sent to the Plaintiffs' Counsel in which the Plaintiffs' Counsel said his fees were $10,640.91. (Doc. # 61-8).  As a practical matter, motions or other applications for relief should not be combined with a party's opposition to another litigant's motion. <u>McCarty v. Grguric</u>, 2007 WL 2330792 * 1 (M.D. Fla. Aug. 15, 2007) (citing Fed. R. Civ. P. 7(b)).  The rationale behind this practice is to allow the opposing litigant sufficient notice of the movant's request for relief and have a reasonable opportunity to respond.  Thus, the Defendant's request to enforce an agreement based upon the e-mail exchanges of March 28, 2011, is due to be denied without prejudice.

Accordingly, it is now

**RESPECTFULLY RECOMMENDED:**

(1) The Plaintiff, Pennie Proctor's Motion to Approve and/or Enforce Settlement Agreement (Doc. #60) should be **DENIED**.

(2) The Defendant South Florida Barbeque, Inc.'s Motion to enforce filed within its Response in Opposition (Doc. # 61) should be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully Recommended** at Fort Myers, Florida, this ___1st___ day of June, 2011.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record